UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

IN RE:                              §
                                    §
EFD, LTD. d/b/a                     §       CASE NO. 11-10846-cag
BLANCO SAN MIGUEL                   §          (Chapter 11)
        (Debtor)                    §

## PROPOSED DISCLOSURE STATEMENT FOR THE DEBTOR'S PLAN OF REORGANIZATION

Eric J. Taube
State Bar No. 19679350
Mark C. Taylor
State Bar No. 19713225
100 Congress Avenue, 18th Floor
Austin, Texas 78701
(512) 472-5997
(512) 472-5248 (FAX)

ATTORNEYS FOR DEBTOR

## THIS DISCLOSURE STATEMENT HAS NOT YET BEEN APPROVED BY THE COURT

# TABLE OF CONTENTS

**Page No.**

I.   **INTRODUCTION**.................................................................................1

    A.    The Debtor ...............................................................................1
    B.    Purpose of Disclosure Statement. .............................................1
    C.    Explanation of Chapter 11 .......................................................1
    D.    Filing Proofs of Claim or Interest ............................................3
    E.    Voting on the Plan. ..................................................................3
    F.    Confirmation Hearing on the Plan. ...........................................5

II.   **REPRESENTATIONS** ...................................................................5

III.   **INFORMATION CONCERNING THE DEBTOR** ........................6

    A.    Ownership and Management ....................................................6
    B.    Acquisition of Land and Financing...........................................6
    C.    Land Sales................................................................................7
    D.    Financial Information and Property ..........................................7
    E.    Valuation of Assets ..................................................................8
    F.    Events leading to the bankruptcy filing ...................................8

IV.   **SUMMARY OF THE PLAN** .........................................................10

    **A.**    **General**...............................................................................10
        1.    United States Trustee Fees...........................................10

    **B.**    **Provisions for Treatment of Classes of Claims and Equity Interests** .............10
        1.    Class I – Administrative Claims ..................................10
        2.    Class II – Priority Non- Tax Claims. ..........................11
        3.    Class III – Priority Tax Claims ...................................11
        4.    Class IV – Claim of Capital Farm Credit.....................11
        5    Class V -- Claim of Dale and Rita Steitle ...................11
        5.    Class VI – General Unsecured Claims..........................11
        6.    Class VII – Equity Interests ........................................11

    **C.**    **Means for Implementation of the Plan** ...............................11
        1.    Payment of Administrative Expense Claims .................11
        2.    Payment of Allowed Priority Claims............................11
        3.    Payment to the United States Trustee ..........................11
        4.    Documentation............................................................12

|   |   | 5. | Other Obligations of the Debtor | 12 |
|---|---|---|---|---|
|   |   | 6. | Sources of Cash for Plan Distributions | 12 |
|   |   | 7. | Management | 12 |
|   | D. | | Feasibility | 12 |
|   | E. | | Alternative to the Proposed Plan and Liquidation Analysis | 12 |
|   | F. | | Risks to Creditors under the Debtor's Plan | 12 |
| V. | | | GENERAL INFORMATION ABOUT THE CLAIMS PROCEDURE | 13 |
|   | A. | | Procedures for Resolving Contested Claims | 13 |
|   | B. | | Pending Litigation, Actions Pertaining to Fraudulent Transfers Voidable Preferences and Equitable Subordination; and Executory Contracts | 13 |
| VI. | | | SECURITIES LAWS CONSIDERATIONS | 14 |
| VII. | | | CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN | 14 |
| VIII. | | | CONFIRMATION OF THE DEBTOR'S PLAN | 14 |
|   | A. | | Confirmation Hearing | 15 |
|   | B. | | Requirements for Confirmation of Plan | 15 |
|   | C. | | Cramdown | 17 |
| IX. | | | VOTING PROCEDURES AND REQUIREMENTS | 18 |
|   | A. | | Ballots and Voting Deadline | 18 |
|   | B. | | Creditors Entitled to Vote | 18 |
|   | C. | | Definition of Impairment | 18 |
|   | D. | | Classes Impaired Under the Debtor's Plan | 19 |
|   | E. | | Vote Required for Class Acceptance | 19 |
| X. | | | IMPLEMENTATION OF THE PLAN | 20 |
|   | A. | | Modification to the Plan | 20 |
|   | B. | | Retention of Jurisdiction | 20 |
| XI. | | | CONCLUSION | 20 |

# DISCLOSURE STATEMENT FOR DEBTOR'S PLAN OF REORGANIZATION

I.    INTRODUCTION.

This Disclosure Statement is submitted by EFD, Ltd. ("EFD" or "Debtor") in connection with the Plan of Reorganization proposed by Debtor.

A.    The Debtor.

The Debtor, a Texas limited partnership formerly known as Blanco San Miguel filed a Voluntary Petition for Relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101 *et. seq.* (the "Bankruptcy Code") in the United States Bankruptcy Court for the Western District of Texas, Austin Division, on April 5, 2011 (the "Petition Date"). Since that time, the Debtor has operated as the Debtor-in-Possession pursuant to the provisions of 11 U.S.C. §§ 1107 and 1108. Capitalized terms used herein, but not expressly defined, are defined in Article I of the Plan of Reorganization ("Plan") proposed by the Debtor, the form of which is enclosed herewith.

B.    Purpose of Disclosure Statement.

The purpose of this Disclosure Statement is to enable the Creditors and holders of Interests in the Debtor, to make an informed decision with respect to the Plan prior to your vote on the Plan. After notice and a hearing, the Court approved this Disclosure Statement as containing information, of a kind and in sufficient detail, adequate to enable the Creditors and holders of Interests in the Debtor to make an informed judgment with respect to acceptance or rejection of the Plan. THE COURT'S APPROVAL OF THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE EITHER A GUARANTY OF THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN OR AN ENDORSEMENT OF THE PLAN.

This Disclosure Statement should be read in its entirety prior to voting on the Plan. The voting process is discussed in <u>Section E</u> herein. This Disclosure Statement describes various transactions contemplated under the Plan. No solicitation of any vote for or against the Plan may be made except pursuant to this Disclosure Statement and §1125 of the Bankruptcy Code and no person has been authorized to utilize any information concerning the Debtor or their business other than the information CONTAINED in this Disclosure Statement. Each Creditor or holder of Interests is urged to study the Plan in full and to consult with your legal counsel about the Plan and its effect.

C.    Explanation of Chapter 11.

Chapter 11 is the principal reorganization chapter of the Bankruptcy Code. Upon the commencement of a Chapter 11 case, §362 of the Bankruptcy Code provides for an automatic stay of all attempts to collect from a debtor claims that arose prior to the bankruptcy filing. Generally speaking, the automatic stay prohibits interference with a debtor's property or business.

Under Chapter 11, a debtor attempts to reorganize its business for the benefit of the debtor, its creditors, and interest holders. Chapter 11 also allows a debtor to utilize the provisions of the Bankruptcy Code to conduct an orderly liquidation of its assets, which is the situation in this case. Formulation of a plan of reorganization is the primary purpose of a reorganization case under Chapter 11 of the Bankruptcy Code. A plan of reorganization sets forth the means for satisfying the Creditors and holders of claims against, and interests in, a debtor. Generally, a claim against a debtor arises from a normal debtor/creditor transaction, such as a promissory note or a trade creditor. An interest in the debtor is held by a party that owns equity of the debtor, such as a partner in a partnership case or a stockholder in a corporate case.

After a plan has been filed with the Court, it must be accepted by holders of certain claims against, or interests in, the debtor. Section 1125 of the Bankruptcy Code requires a plan proponent to fully disclose to creditors and interest holders sufficient information about the debtor, its assets and the plan of reorganization before acceptances of that plan may be solicited. This Disclosure Statement is being provided to the Creditors and holders of Interests in the Debtor, to satisfy the requirements of §1125 of the Bankruptcy Code.

The Bankruptcy Code provides that claimants and interest holders are to be grouped into "classes" under a plan and that they will vote to accept or reject a plan by class. While bankruptcy courts have expressed various methods to be used in classifying claimants, a general rule of thumb is that creditors and interest holders with similar legal rights are placed together in the same class. For example, all creditors entitled to priority under the Bankruptcy Code might be placed in one class, while all creditors holding general unsecured claims might be placed in a separate class.

The Bankruptcy Code does not require that each holder of a Claim against the Debtor vote in favor of the Plan in order for the Court to confirm the Plan. Rather, the Plan must be accepted by each Class of Creditors (subject to an exception discussed below). In order for the Plan to be accepted by a Class of Creditors, those Creditors holding at least two-thirds (2/3) in dollar amount and more than one-half (½) in number of Allowed Claims actually voting on the Plan in such Class must vote for the Plan. For example, if a Class has ten (10) Creditors that vote and the total dollar amount of those ten (10) Creditors' claims is $1,000,000, then for such Class to have accepted the Plan, six (6) or more of those Creditors must have voted to accept the Plan (a simple majority) and the Claims of the Creditors voting to accept the Plan must exceed $666,667 (a 2/3 majority).

The Court may confirm the Plan even though fewer than all Classes of Claims and Interests vote to accept the Plan. In this instance, the Plan must be accepted by at least one "impaired" Class of Claims, without including any acceptance of the Plan by an insider. Section 1124 of the Bankruptcy Code defines "impairment" and generally provides that a claim which will not be repaid in full or as to which legal rights are altered under a plan is deemed to be "impaired." An interest that is adversely affected under a plan is deemed to be "impaired." Under the Plan, all classes except Classes I and II are impaired.

Even if all impaired Classes of Claims or Interests under the Plan do not vote to accept the Plan, the Plan Proponent (i.e., in this Plan, the Debtor and the Committee) may nevertheless request the Court to confirm the Plan pursuant to the "cramdown" provisions of §1129(b) of the Bankruptcy Code. Those provisions permit the Plan to be confirmed over the objections of Creditors or holders of Interests if the Court determines that the Plan does not discriminate unfairly and is fair and equitable with respect to each impaired, dissenting Class of Claims or Interests.

Independent of the acceptance of the Plan by all Classes of Claims and Interests, in order to confirm the Plan, the Court must determine that the requirements of § 1129(a) of the Bankruptcy Code have been satisfied. See infra "Requirements for Confirmation of the Plan," Article IX, for a complete discussion of the § 1129(a) requirements for confirmation of a plan of reorganization. The Debtor believes that the Plan satisfies each of the requirements of § 1129(a) of the Bankruptcy Code for confirmation.

Confirmation makes the Plan binding upon the Debtor, all Creditors and Interest Holders, and other parties in interest, whether or not they have accepted the Plan.

D.      Filing Proofs of Claim or Interest.

In order to participate in the payments and other distributions under the Plan, a Creditor must have an Allowed Claim against, or Interest in the Debtor. The first step in obtaining an Allowed Claim or Interest is generally filing a Proof of Claim or Proof of Interest.

A Proof of Claim or Proof of Interest is deemed filed for any Claim or Interest that appears in the Schedules which were filed in this case, except a Claim or Interest that is scheduled as disputed, contingent, unliquidated or in an unknown amount. In other words, if a Creditor or Interest Holder agrees with the amount of the Claim or Interest as scheduled by the Debtor and that Claim or Interest is not listed in the Schedules as being disputed, contingent, or unliquidated, it is not necessary that a separate Proof of Claim or Proof of Interest be filed.

Claims or Interests that are unscheduled, or which are scheduled as disputed, contingent, or unliquidated, or which vary in amount from the amount claimed by the Creditor or Interest Holder shall be recognized and allowed only if a Proof of Claim or Proof of Interest is timely filed. The Schedules are on file with the Clerk of the Court and are available for inspection during regular Court hours. The Court set a deadline of August 8, 2011 for filing Proofs of Claim or Proofs of Interest by non-government Claimants in this case.

E.      Voting on the Plan.

The Debtor is soliciting acceptances of the Plan from the Creditors and holders of Interests in Classes II, IV, V, VI, and VII. Each of these Classes is impaired under the Plan. All other Classes consist of Creditors whose treatment is payment in full and who are not entitled to vote under the Plan because they are unimpaired. Pursuant to the Bankruptcy code and Rules, such Classes are deemed to have accepted the Plan.

Each Creditor or Interest Holder entitled to vote on the Plan as of the date the Court approves this proposed Disclosure Statement may vote by completing, dating and signing a ballot enclosed with this Disclosure Statement as instructed below. Any holder of an Allowed Claim or Interest in Classes II, IV, V, VI, and VII is entitled to vote to accept or reject the Plan.

Any Claim as to which an objection is filed is not entitled to vote, unless the Court, upon application or motion of the Creditor or Interest Holder whose Claim has been objected to, temporarily allows the Claim in an amount that it deems proper for the purpose of accepting or rejecting the Plan. A vote may be disregarded or disallowed if the Court determines that it was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

BEFORE COMPLETING YOUR BALLOT, PLEASE READ THE VOTING INSTRUCTION SHEET THAT ACCOMPANIES THE BALLOT CAREFULLY. After completing, dating and signing the ballot, your ballot must be delivered to counsel for the Debtor at the following address in order to be counted:

> Hohmann, Taube & Summers, L.L.P.
> Attention: EFD Ballots
> 100 Congress Avenue, 18th Floor
> Austin, Texas 78701
> Telephone: (512) 472-5997
> Facsimile: (512) 472-5248

IN ORDER TO BE COUNTED YOUR BALLOT MUST BE ACTUALLY RECEIVED AT THE FOREGOING ADDRESS NO LATER THAN 5:00 P.M. CENTRAL TIME, ON _____, 2011. IF YOUR BALLOT IS ACTUALLY RECEIVED AFTER THAT DATE AND/OR TIME, IT MAY NOT BE COUNTED.

Ballots may be cast by facsimile transmission to counsel for the Debtor (512) 472-5248, provided:

- the facsimile is actually received and time-stamped prior to the voting deadline; and

- the original signed ballot, postmarked no later than the day of the voting deadline, is mailed to and received by counsel for the Debtor.

IN ORDER TO AVOID THE POSSIBILITY OF YOUR FACSIMILE VOTE BEING BACKED UP IN TRANSMISSION AND NOT BEING COUNTED, YOU ARE REQUESTED TO DISPATCH YOUR TRANSMISSION PRIOR TO 6:00 O'CLOCK P.M., CENTRAL TIME, ON THE DAY BEFORE THE VOTING DEADLINE.

Ballots that are signed and timely returned to the address indicated above, but which do not expressly indicate a vote either to accept or reject the Plan will be counted by the Debtor as an acceptance of the Plan.

F.     Confirmation Hearing on the Plan.

Section 1128(a) of the Bankruptcy Code requires the Court, after notice, to hold a hearing on confirmation of a plan of reorganization. As indicated previously, the Court has scheduled the Confirmation Hearing on the Plan for _____, 2011 at _____o'clock ___.m. before the Honorable Craig A. Gargotta, United States Bankruptcy Judge, in his courtroom, Homer Thornberry Bldg., 903 San Jacinto, Austin, Texas.

Section 1128(b) of the Bankruptcy Code provides that any party in interest may object to confirmation of a plan. Any objection to confirmation of the Plan must be made in writing. Written objections to confirmation of the Plan, if any, must be filed with the Court and a copy of such written objections must be actually received by counsel for the Debtor at the above address, on or before 5:00 p.m., Central Time, on_____2011. Objections not timely filed and actually received by the Debtor's counsel will not be considered by the Court.

II.     REPRESENTATIONS.

NO REPRESENTATIONS OR OTHER STATEMENTS CONCERNING THE DEBTOR (PARTICULARLY AS TO THE VALUE OF ITS ASSETS WHICH ARE BASED SOLELY UPON THE DEBTOR'S ESTIMATES UNLESS OTHERWISE EXPRESSLY STATED HEREIN) ARE AUTHORIZED BY THE DEBTOR OTHER THAN THOSE EXPRESSLY SET FORTH IN THIS DISCLOSURE STATEMENT.

ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE YOUR ACCEPTANCE, WHICH ARE OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT, SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISIONS. ANY SUCH ADDITIONAL REPRESENTATIONS AND INDUCEMENTS SHOULD BE REPORTED TO COUNSEL FOR DEBTOR, MARK C. TAYLOR, HOHMANN, TAUBE & SUMMERS, L.L.P., 100 CONGRESS AVE., 18th FLOOR, AUSTIN, TEXAS 78701, WHO SHALL DELIVER SUCH INFORMATION TO THE COURT WHICH MAY TAKE SUCH ACTION AS IT DEEMS APPROPRIATE.

THE INFORMATION CONTAINED HEREIN HAS NOT BEEN INDEPENDENTLY AUDITED. THE RECORDS KEPT BY THE DEBTOR RELY FOR THEIR ACCURACY UPON BOOKKEEPING PERFORMED BOTH INTERNALLY AND BY OUTSIDE SERVICES. FOR THIS REASON, THE DEBTOR DOES NOT WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS CORRECT, ALTHOUGH EVERY REASONABLE EFFORT HAS BEEN MADE TO BE ACCURATE. THIS DISCLOSURE STATEMENT CONTAINS ONLY A BRIEF SUMMARY OF THE PLAN AND IS QUALIFIED IN ITS ENTIRETY BY TERMS AND PROVISIONS OF THE PLAN. EACH CREDITOR, INTEREST HOLDER, AND PARTY-IN-INTEREST IS URGED TO REVIEW THE PLAN IN FULL PRIOR TO VOTING ON THE PLAN TO INSURE A COMPLETE UNDERSTANDING OF THE PLAN AND THIS DISCLOSURE STATEMENT.

THIS DISCLOSURE STATEMENT IS INTENDED FOR THE SOLE USE OF CREDITORS, INTEREST HOLDERS, AND PARTIES-IN-INTEREST TO MAKE AN INFORMED DECISION ABOUT THE PLAN. ALL REPRESENTATIONS HAVE BEEN MADE AS OF THE DATE HEREOF, AND THERE SHALL BE NO IMPLICATION THAT THERE HAS NOT BEEN OR CANNOT BE A CHANGE IN CIRCUMSTANCES SINCE THE DATE HEREOF.

THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION, NOR HAS THE SECURITIES AND EXCHANGE COMMISSION PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN.

THE COURT'S APPROVAL OF THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE AN ENDORSEMENT BY THE COURT OF THIS PLAN OR GUARANTEE THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.

III.    INFORMATION CONCERNING THE DEBTOR.

### A. Ownership and Management

EFD, Ltd ("EFD") is a limited partnership that was formed March 16, 2006 to purchase approximately 6000 acres in Burnet and Blanco Counties for agriculture use and future sale. The general partner of EFD is WWTT, LLC, whose Manager is S. Frank Bright.

### B. Acquisition of Land and Financing

In March 2006 EFD purchased the following tracts of land in the Burnet & Blanco Counties:

March 10, 2006 – 316.045 acres for $2,212,000.00.
March 20, 2006 - 5476.23 acres for $19,166,840.00.

These 2 tracts of land were financed by Capital Farm Credit with a loan in the amount of $22,526,300.00. The terms of the Capital Farm Credit were: 7.25% interest, annual installments due beginning April 1, 2007 until the maturity date of April 1, 2011 when the unpaid balance would be due in full. EFD was paying this note as agreed until April 1, 2010 when it became delinquent.

Between May and June 2006 EFD purchased the following 4 tracts of land in the Burnet and Blanco Counties. These were financed by IICB, LP with a loan in the amount of $1,000,000.00:

May 8, 2006 – 6.05 acres for $325,000.00
May 24, 2006 – 55.19 acres for $551,900.00
May 24, 2006 – 9.04 acres for $90,400.00
June 21, 2006 – 4.65 acres for $29,760.00

On November 16, 2006, the $1,000,000.00 note with IICB, LP was paid in full with a new note by Capital Farm Credit in the amount of $3,076,200.00. The Capital Farm Credit note terms for

this Note were : 7.40 % interest, annual installments due beginning April 1, 2007 until the maturity date of April 1, 2011 when the unpaid balance would be due in full. EFD was paying this note as agreed until April 1, 2010 when it became delinquent.

On December 1, 2006, EFD assumed a note with 21st Mortgage Corp., secured by real and personal property consisting of a mobile home sitting and a 6.05 acre tract of land. The amount assumed was $22,049.58. On January 25, 2007 this note was paid in full.

On March 30, 2007, EFD purchased 103 acres in Coopers Bend Estates in Burnet County (the"Steitle Property") for the amount of $2,910,000.00. The owners, Dale and Rita Steitle, provided owner financing in the amount of $2,500,000.00. The Steitle Note terms were: 8.25% interest, monthly payments of interest only beginning May 1, 2007 through the maturity date of April 1, 2012 when the unpaid balance would be due in full. EFD was paying this note as agreed until April 1, 2010 when it became delinquent.

On December 26, 2007, EFD purchased 9.76 acres in Burnet County for $195,200.00 financed by Saber Ventures, LP with a loan in the amount of $195,924.00. On March 7, 2008 Saber Ventures, LP was paid in full.

On October 16, 2009, the 9.76 acre tract was used as collateral to secure a loan from IICB, LP in the amount of $158,000.00. The IICB, LP note terms were : 14% interest, monthly payments of interest only beginning November 15, 2009 through the maturity date of October 16, 2010 when the unpaid balance would be due in full. EFD was paying this note as agreed until July 15, 2010 when it became delinquent. On February 24, 2011, IICB, LP foreclosed its lien on the 9.76 acres and took possession of the property.

### C. Land Sales

EFD has made the following land sales:

April 3, 2008 – 200 acres sold in the amount of $2,500,000.00
April 6, 2009 – 122 acres sold in the amount of $1,403,000.00
April 6, 2009 – 122 acres w/ house sold in the amount of $1,403,000.00
April 30, 2010 – 10 acres sold in the amount of $100,000.00

All tracts of land sold were collateral for the notes held by Capital Farm Credit, and the proceeds were paid to Capital Farm Credit to reduce the note balances.

### D. Financial Information and Property:

The partners of EFD have made cash contributions in the amount of $5,467,964.71, additionally they have made loans to the partnership in the amount of $844,390.47 which remain unpaid.

Capital improvements total $3,189,650.63 and marketing, advertising and promotional expenses total $718,827.60. A 40 year contract with LCRA was entered into on February 21, 2007 to provide water to 5850 acres. To date, $500,278.59 has been paid for the "Reserved Water Charge". EFD was paying this contract as agreed until April 1, 2011 when it became delinquent.

$6,567,202.93 has been paid in interest on real estate notes, and $4,125,294.76 has been paid in principal on such notes. Out of these totals, Capital Farm Credit has been paid $5,647,530.48 in interest and $2,832,620.24 in principal. After the bankruptcy was filed, and in violation of 11 U.S.C 362, Capital Farm Credit unilaterally offset amounts that were due EFD against the debt owed to it. The amount wrongfully offset was $40,814,48. EFD reserves all claims against Capital Farm Credit for the wrongful offset of these funds.

EFD's only source of income other than land sales has been a tower lease with LCRA which is paid annually in March of $9,600.00. To date EFD has received a total of $57,600.00.

### E. Valuation of Assets

Based upon an appraisal conducted in 2010, Debtor believes that the Property has a market value of approximately $124,000,000. A current appraisal is in process. The Debtor believes that the Steitle Property has a market value of approximately $3 million. The Debtor has also listed receivables of $214,605.75. Most of these receivables are related-party transactions and adjusting journal entries made for tax purposes. Additionally, certain of the receivables may be subject to set-off. Accordingly, the collectability of the receivables is questionable. The Debtor's only other assets consist of cash in its bank accounts, a mobile home valued at less than $30,000, and miscellaneous office equipment and furnishings.

### F. Events leading to the bankruptcy filing:

As described above, EFD secured two loans with Capital Farm Credit ("CFC") in 2006. These loans had original maturity dates of April 1, 2011. In April of 2008, although EFD was not in default on the loans, the maturity date of both notes was shortened unilaterally by CFC by one year to April 2010, and CFC also demanded a change in the amortization schedule by imposing a new requirement of a $5,000,000 principle reduction in the loan in order to obtain a renewal. Additionally, new partial release requirements were imposed raising the release price from par to 125% of par value.

The explained reasoning for the changes was that Capital Farm Credit was now calling the collateral Property "land in transition" explaining that (1) connecting the Property to Hwy 71 effectively brought the property closer to the City of Austin and (2) EFD obtaining an LCRA water contract caused the loans to no longer be considered agriculture property. EFD and its counsel looked for specific regulations which would prohibit a water contract serving agriculture property and have not found any regulations supporting CFC's unilateral determination that the loans did not meet applicable guidelines. Moreover, at the time the loans were modified, the Property was being used for agriculture purposes. The Property retains its agricultural exemption with the Burnet and Blanco County tax appraisal districts.

When the loan was made, CFC knew that the ranch was in the outer limits of the path of development from the City of Austin. No one expected the ranch to remain indefinitely as large agriculture property. CFC was also aware that agriculture use alone could not support the notes and that portions of the tracts would have to be sold in order to pay the note as part of the original plan submitted and approved by the bank. Therefore, enhancing the value of the

Property though obtaining access to Hwy 71 was supported by CFC when it made the second loan to EFD. Likewise, obtaining a water contract from the LCRA further enhanced the Property's value and was intended to enable EFD to better position itself to pay the loans.

When CFC requested the loan modifications in 2008, the economy was strong, and no one anticipated the economic collapse that occurred in the fall of that year. EFD was willing to agree with the request in order to strengthen the relationship. It did not foresee the collapse of the economy any better than CFC. However, the turmoil that resulted in the financial markets has made it very difficult to find buyers for parcels of over $5,000,000, which is the amount CFC is requiring as a principal reduction. Had the bank not imposed the change in the deal in mid-stream, and the new requirement of $5,000,000 annual principal payments, EFD is confident that the loan would still be performing today as it had proven its ability to sell smaller parcels sufficient to service the debt as per the original plan. The market for land is improving today; however, CFC's actions in posting its real estate collateral for foreclosure forced the Debtor to file bankruptcy to protect the equity in the property.

In April 2009, when the annual payments were due, EFD sold two tracts to insiders or persons connected to insiders. CFC financed the purchase of 58 and 122 acres by two different partnerships.

Also, for reasons never explained, in April 2009 CFC refused to release approximately 50 acres for a sale that met the partial release requirements. The release of the 50 acres would have helped EFD with its working capital and ability to market the Property and raise funds for the partnership to help meet the current payment.

The shortening of the maturity date of the loans in 2008 by one year also negatively impacted EFD because it did not allow EFD sufficient time to sell enough land to pay off the notes. Instead, it was forced to focus on sale of a large parcel sufficient to meet the new $5,000,000 principle reduction requirement. When the bank both raised the principal reduction requirement and shortened the note maturity date, it became impossible to raise new capital. EFD worked diligently at selling a large parcel to pay CFC's new demands, however, the daily news stories about the melt down of Wall Street temporarily reduced the number and seriousness of potential buyers in the market as well as alternative sources of refinancing large land parcels.

On March 31, 2010, EFD sent a letter to CFC in which it requested a loan extension for the April 1, 2010 maturity date. CFC informed EFD that it needed to provide additional collateral in the form of the LCRA contract and easements, which would add considerable value to the overall collateral securing the notes. EFD replied in a letter dated April 19, 2010 asking for a restructuring of the loans and provided a detailed liquidation plan as requested by CFC. On April 22, 2010, CFC responded with a Restructuring Agreement and accepted the additional collateral of the LCRA contract and easement along with setting time lines through March 31, 2011 for closing sufficient land sales.

Over the last year EFD has worked diligently to find buyers, lenders, or investors . EFD has been unable to refinance the indebtedness owed to CFC. With the inability to pay the loan balances

due CFC in full by April 1, 2011, notice of foreclosure was received. EFD filed for bankruptcy on April 5, 2011, the day of the scheduled foreclosure sale.

## IV.    SUMMARY OF THE PLAN

A.    General.

Enclosed with this Disclosure Statement is a complete copy of the Debtor's Plan of Reorganization. For specific details of the Plan of Reorganization, reference should be made to the Plan in its entirety. All capitalized terms used herein shall have the meanings as set forth in Article I of the Plan. The summary provided below is merely for the convenience of anyone reading the Disclosure Statement and to the extent that this summary in any way conflicts with the actual Plan, the terms of the Plan will prevail.

1.    United States Trustee Fees. All fees and charges assessed against the Debtor or its Estate under Chapter 123 of Title 28 of the U.S. Code, 28 U.S.C. §§ 1911-1930 shall be paid in full in Cash.

B.    Provisions for Treatment of Classes of Claims and Equity Interests.

1.    Class I – Administrative Claims. Each holder of an Allowed Administrative Claim shall receive from the Debtor with respect to such Allowed Claim, either (i) the amount of such Allowed Claim from the Debtor, in one(1) cash payment on the later of (a) the Effective Date, (b) the date that is sixty (60) days after a request for payment of the Claim is filed, (c) the date that is twenty (20) days after the Claim becomes an Allowed Claim; or (ii) such other treatment as may be agreed upon in writing by such holder; provided, however, that an Allowed Administrative Claim representing a liability incurred in the ordinary course of business shall be paid by the Debtor upon presentment or otherwise in accordance with the terms of the particular transaction and any agreements relating thereto.

Applications for compensation and reimbursement filed by professionals employed under §327 of the Bankruptcy Code or otherwise employed by order of the Bankruptcy Court shall be filed no later than sixty (60) days after the Effective Date. All other requests for payment of Administrative Claims (or any other means of preserving and obtaining payment of Administrative Claims found to be effective by the Bankruptcy Court) shall be filed by the earlier of (i) thirty (30) days after the date of service of notice of the Effective Date, or (ii) any applicable bar date established by the Bankruptcy Court and noticed separately by the Debtor, and if no timely request for payment of Administrative Claim is received, such claims shall be forever barred and shall not be assertable in any manner against the Debtor or the estate provided, no request for payment shall be required with respect to Administrative Claims that have been paid previously or with respect to Administrative Claims representing liabilities incurred in the ordinary course of business, unless a dispute exists as to any such liabilities or unless the provisions of the Bankruptcy Code require approval or allowance by the Bankruptcy Court as a precondition to payments being made on any such liability. This class is not impaired.

2.      Class II – Priority Non- tax Claims.  Each holder of a Class II Priority Non-Tax Claim if any, shall receive payment of its Allowed Claim in full within thirty (30) days months from the Effective Date.  Class II is impaired.

3.      Class III – Priority Tax Claims.  The ad valorem tax claims of Blanco County ($8,246.60) and Burnet County ($135.84) will be paid in full and in cash on the Effective Date.

4.      Class IV – Claim of Capital Farm Credit.  The holder of the Class IV Claim will receive sufficient acreage selected by the Debtor based upon the Court's valuation of the Property, along with all entitlements related to such Property, in satisfaction of its claim (the "Conveyed Property").  Upon conveyance of the Conveyed Property, the claim and the indebtedness owed to the Class IV holder will be deemed paid in full and satisfied.  The Class IV Claim holder will also receive an easement for access to the Conveyed Property.  The Debtor will also release all claims owned by the Estate against CFC.  This Class is impaired.

5.      Class V – Claim of Dale and Rita Steitle.  The Allowed Claim of the Class V holder, consisting of debt of approximately $2.75 million, will be satisfied by a return of the property securing repayment of such indebtedness to the Class V Claim holder, at which time the claim and indebtedness will be deemed paid in full and satisfied.  This Class is impaired.

6.      Class VI – General Unsecured Claims.  Each holder of a Class VI General Unsecured Claim shall receive payment in full for their allowed unsecured in cash and without interest no less than one year from the Effective Date.

7.      Class VII – Equity Interests.  Holders of Equity Interests of the Debtor shall retain their Interests, but shall not receive any distributions or any other property on account of such interests until all senior classes are paid in full.

C.      Means for Implementation of the Plan.

1.      Payment of Administrative Expense Claims.

Administrative Claims shall be paid pursuant to the terms of the Plan from cash held by the Debtor or contributed to the partnership by the partners.  The only administrative claims known to the Debtor are the professional fees of Debtor's counsel.

2.      Payment of Allowed Priority Claims.

The Debtor believes that property taxes have been paid, and is not aware of any Priority Claims.

3.      Payment to the United States Trustee.

All fees due to the United States Trustee pursuant to 28 U.S.C. § 1930(a) shall be paid as and when they become due.

4.     Documentation.

The Debtor shall prepare all documentation to be executed in connection with the Plan, subject to approval by the Court. The Debtor shall execute documents necessary to effectuate the Plan.

5.     Other Obligations of the Debtor.

The Debtor shall (i) review all Claims filed against the Estates, and if advisable, object to Claims, and (ii) investigate, prosecute, settle or dismiss all Debtor's causes of actions.

6.     Sources of Cash for Plan Distributions.

Except as otherwise provided in the Plan or the Confirmation Order, all cash necessary for the Debtor to make payments pursuant to the Plan shall be obtained from the sale of property retained by the Reorganized Debtor and/or by contributions from the partners.

7.     Management.

The Debtor and Reorganized Debtor will continue to be managed by its general partner, WWTT, LLC. S. Frank Bright will continue as Manager of the general partner.

D.     Feasibility.

The Plan is, by definition, feasible because payment to Class IV and V secured creditors will be made through conveyance of property already owned by the Debtor. Payment to Class VI unsecured creditors will be made through sales or capital calls made to the Debtor's limited partners.

E.     Alternative to the Proposed Plan and Liquidation Analysis.

Other alternatives to the Plan include (i) liquidation under Chapter 7, (ii) the dismissal of the bankruptcy case, or (iii) the proposal and acceptance of an alternative plan of reorganization. The Debtor is unaware of any alternative plan. Dismissal would result in loss of certain rights and claims under the Bankruptcy Code, including the ability to conduct the claims objection procedures to eliminate claims that are not valid. Conversion to a Chapter 7 would result in appointment of a Trustee. Unless the Trustee could quickly locate a buyer for the Property, CFC would likely be allowed to foreclose its lien, leaving nothing for other creditors.

F.     Risks to Creditors under the Debtor's Plan.

The Debtor believes that the risks to administrative, priority and unsecured creditors under the Plan are minimal, as described in preceding paragraph.

## V.    GENERAL INFORMATION ABOUT THE CLAIMS PROCEDURE.

### A.    Procedures for Resolving Contested Claims.

The Debtor, or after the Effective Date the Reorganized Debtor shall have the sole right and duty to review Claims and object to the Proof of Claim filed by any party or claimant, if appropriate. Objections to Claims must be filed with the Bankruptcy Court no later than 60 days after the Effective Date and served upon the holders of each of the Claims to which objections are made.  The Debtor has not completed a claims analysis.  Any and all claims in all classes may be subject to objection.

If the Debtor or the Reorganized Debtor files an objection to a Claim, the Creditor shall file a response to any such objection within twenty-one (21) days from the mailing date set out in the certificate of service for the objection. Responses may take one of two forms, namely, a consent to the objection, or a non-consenting response. A non-consenting response shall state specific reasons for allowance of the claim (and all parts there), shall list the names and addresses of any and all witnesses to be called in support of the response, and shall include copies of all documents (including invoices, security documents and the like) relied upon by the non-consenting party to support allowance of the Claim or Interest. Copies of such responses shall be served upon the attorneys for the Debtor.  Failure to timely file a response shall result in a deemed consent to the objection, and upon the expiration of the twenty-one (21) day period, the Court may enter an order without further notice or hearing, in the event a timely non-consenting response is filed, the Court shall set a hearing on not less than thirty (30) days' notice to the parties in accordance with Bankruptcy Rule 3007.

The Reorganized Debtor shall have responsibility for litigating, withdrawing or resolving all objections to claims after the Effective Date.

Except as otherwise provided in the Plan, the allowance of any pre-petition Claim, the resolution of any Claim dispute, or the payment of such Claims shall not, absent an express contrary ruling by the Court, operate as a bar, by application of the principles of res judicata or collateral estoppel, to the recovery of pre-petition Claims or the exercise of any right of setoff held by the Debtor with respect to the Claims held by the affected Claimants. To the extent such right of offset is not resolved in the Claim objection process, any affected Claimant shall retain its right of offset of mutual Claims as provided in §553 of the Bankruptcy Code.

Any amendments to claims previously filed must be filed prior to the Effective Date or they will be void.

Debtor intends to file objections to the claims filed by any party whose claim is listed as disputed, contingent or liquidated. Debtor reserves the right to review and object to any proof of claim on file in this case.

### B.    Pending Litigation, Actions Pertaining to Fraudulent Transfers, Voidable Preferences and Equitable Subordination; and Executory Contracts.

There is no pending litigation regarding preferences, fraudulent transfers or subordination claims, but the Debtor, reserves the right to investigate and bring appropriate actions for recovery of fraudulent transfers or voidable preferences. The Debtor does not believe it has made any preferential transfers. The Debtor may have claims against CFC for its actions described in paragraph IIIF above including the wrongful offset of funds post-petition, but will release such claims upon transfer of the property to CFC in satisfaction of CFC's Claim and the indebtedness owed to CFC.

The Debtor is a party to a Water Sale Contract dated February 21, 2007, as amended by agreement dated June 11, 2010, and a Water Sale Contract Repayment Agreement dated June 10, 2010. The Water Sale Contract provides for the ability to purchase up to 2500-acre feet of water annually, to be diverted from Lake Travis. The Debtor has granted a lien on the Water Sale Contract to CFC.

Any party which has done business with the Debtor may be sued for affirmative claims, avoidance of transactions, preferences or for any other actions under applicable law.

VI.    SECURITIES LAWS CONSIDERATIONS.

No securities are being issued pursuant to the Plan.

VII.    CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN.

The transactions contemplated by the confirmation of the plan may have an impact on the tax treatment received with respect to distributions under the Plan. That impact may be adverse to the creditor or interest holder.

An analysis of federal income tax consequences of the plan to creditors, interest holders, and the Debtor requires a review of the Internal Revenue Code ("IRS Code"), the Treasury regulations promulgated thereunder, judicial authority and current administrative rulings and practice. Neither the Debtor nor the Debtor's counsel have requested a ruling from the Internal Revenue Service with respect to these matters. Accordingly, no assurance can be given as to the IRS's interpretation of this Plan.

THE TRANSACTION CONTEMPLATED BY THE CONFIRMATION OF THE PLAN MAY HAVE AN IMPACT ON THE TAX TREATMENT OF ANY CREDITOR OR INTEREST HOLDER. THAT IMPACT MAY BE ADVERSE TO THE CREDITOR OR INTEREST HOLDER. NOTHING HEREIN IS INTENDED TO BE ADVICE OR OPINION AS TO THE TAX IMPACT OF THE PLAN ON ANY INDIVIDUAL CREDITOR OR INTEREST HOLDER. EACH CREDITOR OR INTEREST HOLDER IS CAUTIONED TO OBTAIN INDEPENDENT AND COMPETENT TAX ADVICE PRIOR TO VOTING ON THE PLAN.

VIII.    CONFIRMATION OF THE DEBTOR'S PLAN.

Under the Bankruptcy Code, the following steps must be taken to confirm the Plan:

A.  Confirmation Hearing.

The Bankruptcy Code requires the Court, after notice, to hold a hearing on confirmation of the plan, at which any party-in-interest may object to confirmation of the Plan.

The date and time of the hearing on confirmation of the Plan will be set forth in a notice to each Creditor. The hearing may be adjourned from time to time by the Court without further notice except for an announcement made at the hearing or any adjournment thereof. Any objection to confirmation of the Plan must be made in writing and filed with the Court and served upon the Debtor's counsel at the address listed below, together with proof of service, on or before the date set by the Court:

Hohmann, Taube & Summers, L.L.P.
100 Congress, 18th Floor
Austin, Texas 78701
Attention: Eric J. Taube
512/472-5997
512/472-5248 (FAX)

Objections to confirmation of the Plan are governed by Bankruptcy Rule 9014. UNLESS AN OBJECTION TO CONFIRMATION IS TIMELY SERVED AND FILED, IT WILL NOT BE CONSIDERED BY THE COURT.

B.  Requirements for Confirmation of Plan.

At the hearing on confirmation of the Plan, the Court shall determine whether the requirements of §1129 of the Bankruptcy Code have been satisfied, in which event the Court shall enter an order confirming the Plan. These requirements are as follows:

1.  The Plan complies with the applicable provisions of the Bankruptcy Code.

2.  The Debtor and Debtor's counsel have complied with the applicable provisions of the Bankruptcy Code.

3.  The Plan has been proposed in good faith and not by any means forbidden by law.

4.  Any payment made or promised by the Debtor or by a person issuing securities or acquiring property under the Plan, for services or for costs and expenses in, or in connection with the Chapter 11 Case or in connection with the Plan and incident to the Chapter 11 Case, has been disclosed to the Court, and any such payment made before the confirmation of the Plan is reasonable, or if such payment is to be fixed after confirmation of the Plan, such payment is subject to the approval of the Court as reasonable.

5.    The Debtor has disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the Plan, as a director, officer, or voting trustee of the Debtor, and the appointment to, or continuance in, such office of such individual, is consistent with the interests of Creditors and Equity Security Holders and with public policy, and the Debtor has disclosed the identity of any insider that will be employed or retained by the Reorganized Debtor and the nature of any compensation for each insider.

6.    Any governmental regulatory commission with jurisdiction, after confirmation of the Plan, over the rates of the Debtor have approved any rate change provided for in the Plan, or such rate change is expressly conditioned on such approval.

7.    With respect to each impaired class of Claims or Equity Security Holders, either each holder of a Claim or Equity Security Interest of such class has accepted the Plan, or will receive or retain under the Plan on account of such Claim or Equity Security Interest, property of a value, as of the Plan Effective Date, that is not less than the amount that such holder would so receive or retain if the Debtor were liquidated on such date under Chapter 7 of the Bankruptcy Code.

8.    Each class of Claims or Equity Security Interest has either accepted the Plan, is not impaired under the Plan or is subject to cramdown.

9.    Except to the extent that the holder of a particular Claim has agreed to a different treatment of such Claim, the Plan provides that Administrative Claims and Priority Claims will be paid in full on the Plan Effective Date and that Priority Tax Claim will receive on account of such Claims deferred cash payments, over a period not exceeding six (6) years after the date of assessment of such Claim, of a value, as of the Plan Effective Date, equal to the allowed amount of such Claim.

10.    At least one class of Claims that is impaired under the Plan has accepted the Plan, determined without including any acceptance of the Plan by any insider holding a Claim of such class.

11.    Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan.

12.    The Debtor believes that the Plan satisfies all of the statutory requirements of Chapter 11 of the Bankruptcy Code, that the Debtor has complied or will have complied with all of the requirements of Chapter 11 and that the proposal of the Plan is made in good faith.

13.    The Debtor believes that the holders of all Claims impaired under the Plan will receive payments under the Plan having a present value as of the Plan Effective Date in amounts not less than the amounts likely to be received if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code.

C.    Cramdown.

In the event that any impaired class of Claims or Interests does not accept the Plan, the Court may still confirm the Plan at the request of the Debtor if, as to each impaired class which has not accepted the Plan, the Plan "does not discriminate unfairly" and is "fair and equitable." A plan of reorganization does not discriminate unfairly within the meaning of the Bankruptcy Code if no class receives more than it is legally entitled to receive for its Claims or Equity Security Interests. "Fair and equitable" has different meanings for Secured Claims and Unsecured Claims.

With respect to a Secured Claim, "fair and equitable" means either: (i) the impaired Secured Creditor retains its liens to the extent of its Allowed Claim and receives deferred cash payments at least equal to the allowed amount of its Claim with a present value of the Plan Effective Date at least equal to the value of such Secured Creditor's interest in the property securing its liens; or (ii) property subject to the lien of the impaired Secured Creditor is sold free and clear of that lien, with that lien attaching to the proceeds of the sale, and such lien proceeds must be treated in accordance with clauses (i) and (iii) hereof; or (iii) the impaired Secured Creditor realizes the "indubitable equivalent" of its claim under the Plan.

With respect to an Unsecured Claim, fair and equitable" means either (i) each impaired Unsecured Creditor receives or retains property of a value equal to the amount of its Allowed Claim; or (ii) the holders of the Claims and Equity Security Interests that are junior to the Claim of the dissenting class will not receive any property under the Plan.

With respect to an Interest, "fair and equitable" means either (i) each holder of an Impaired Interest of such Class receives property of a value equal to the greatest of (a) the allowed amount of any fixed liquidation preference to which such holder is entitled, or (b) any fixed redemption price to which such holder is entitled, or (ii) the value of such Interest that is junior in priority to the Interests of the dissenting Class will not receive any Property under the Plan.

The absolute priority rule set forth in §1129(b)(2)(B) of the Bankruptcy Code requires a cram-down of a plan of reorganization over a dissenting creditor class to meet an "either/or" test. Either (i) the members of each dissenting impaired class of unsecured claims must receive property of a value, as of the effective date of the plan, equal in amount to such class members' allowed claim; or (ii) holders of claims and interests that are junior to each dissenting impaired class of claims must not receive any property under the plan of reorganization. The absolute priority rule applies only in cases when a class of claims or Equity Interests is both impaired and does not accept the plan. Thus, the absolute priority rule does not apply to all classes of claims and Equity Interests but only to the dissenting class and classes junior to the dissenting class. The Debtor believes that the Plan satisfies the absolute priority rule. Additionally, the Plan provides for an infusion of new value by existing equity holders for retention of their interests.

In the event one or more classes of impaired Claims or Interests rejects the Plan, the Court will determine at the hearing for confirmation of the Plan whether the Plan is fair and equitable and does not discriminate unfairly against any rejecting impaired class of Claim. If the Court determines that the Plan is fair and equitable and does not discriminate unfairly against any rejecting impaired class of Claims or Interests, the Court can confirm the Plan over the objection of any impaired class.

IX.     VOTING PROCEDURES AND REQUIREMENTS.

A.      Ballots and Voting Deadline.

In addition to this Disclosure Statement and a copy of the Plan, each Creditor entitled to vote will hereafter be provided with a ballot to be used for voting to accept or reject the Plan.

In order to be counted for voting purposes, ballots for the acceptance or rejection of the Plan must be completed and returned to the Debtor's counsel by 5:00 p.m. on_____, 2011.

Whether or not the Creditor entitled to vote expects to be present at the hearing, each Creditor is urged to complete, date, sign and properly mail the ballot to the following address:

> Hohmann, Taube & Summers, L.L.P.
> Attention: EFD Ballots
> 100 Congress,18th Floor
> Austin, Texas 78701
> Facsimile: (512) 472-5248

B.      Creditors Entitled to Vote.

Any Creditor whose Claim is impaired under the Plan is entitled to vote, if either (i) its Claim has been scheduled by the Debtor (and such Claim is not scheduled as disputed, contingent or unliquidated), or (ii) it has filed a proof of Claim on or before the first date set by the Court for such filings. Any Claim as to which an objection has been filed (and such objection is still pending) is not entitled to vote, unless the Court temporarily allowed the Claim in an amount which it deems proper for the purpose of accepting or rejecting the Plan upon application by the Creditor. Such application must be heard and determined by the Court at such time as specified by the Court. A Creditor's vote may be disregarded if the Court determines that the Creditor's acceptance or rejection was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

C.      Definition of Impairment.

Under §1124 of the Bankruptcy Code, a class of Claims or Equity Security Interests is impaired under a Chapter 11 plan unless, with respect to each Claim or interest of such class, the Plan:

1.      Leaves unaltered the legal, equitable, and contractual rights of the holder of such Claim or Equity Security Interest; or

2.      Notwithstanding any contractual provision or applicable law that entitled the holder of a Claim or Equity Security Interest to receive accelerated payment of its Claim or Equity Security Interest after the occurrence of default:

(a)      Cures any such default that occurred before or after the commencement of the case under the Bankruptcy Code, other than a default that consists of a breach of any provision relating to the insolvency or financial condition of the Debtor at any time before the closing of the case, the commencement of a case under the Bankruptcy Code, or the appointment of or taking possession by a trustee in a case under the Bankruptcy Code;

(b)      Reinstates the maturity of such Claim or Equity Security Interest as it existed before the default;

(c)      Compensates the holder of such Claim or Equity Security Interest for damages incurred as a result of reasonable reliance on such contractual provision or applicable law; and

(d)      Does not otherwise alter the legal, equitable, or contractual rights to which such Claim or Equity Security Interest entitles the holder of such Claim or Equity Security Interest.

D.      Classes Impaired Under the Debtor's Plan.

The following classes of Claims and Interests are impaired under the Plan, and Creditors and Interest Holders holding Claims in such classes are entitled to vote to accept or reject the Plan: Classes III, IV, V and VI .   All other classes are either unimpaired under the Plan and are deemed to have accepted the Plan, or not receiving anything under the plan.

E.      Vote Required for Class Acceptance.

The Bankruptcy Code defines acceptance of a Plan by a class of creditors or Equity Security Interest holders as acceptance by holders of two-thirds (2/3) in dollar amount and a majority in number of the Claims or Equity Security Interests of that class which actually cast ballots for acceptance or rejection of the Plan; i.e., acceptance takes place only if sixty-six and two thirds percent (66 2/3%) in amount of claims and Equity Security Interests in each class and more than fifty percent (50%) of Claims or Equity Security Interests voting in each class cast their ballots in favor of acceptance.

## X.    IMPLEMENTATION OF THE PLAN.

When the Plan is approved by the Court, the Bankruptcy Judge will sign an Order Confirming the Plan. The Effective Date will be the date set for the closing of the transactions contemplated by the Plan, which will be the first business day following the expiration of ten (10) days from the date of entry of the Order Confirming the Plan.

### A.    Modification to the Plan.

Section 1127(a) of the Bankruptcy Code permits the Debtor to amend or modify the Plan at any time prior to Confirmation. Post-confirmation modifications of the Plan are allowed under §1127(a) of the Bankruptcy Code, if the proposed modification is offered before the Plan has been substantially consummated or pursuant to an article of the confirmed Plan authorizing the intended modification. The Debtor and Committee reserve the right to amend or modify the Plan at any time at which such modification is permitted under the Bankruptcy Code.

In the event that the Debtor proposes to modify the Plan prior to the Confirmation Order, further disclosure pertaining to the proposed modification will be required only if the Court finds, at the hearing, that the pre-confirmation modifications adversely change the treatment of any Creditor or Equity Security Interest holder who has previously accepted the Plan. If the proposed pre-confirmation modification is material and adverse, or if a post confirmation modification is sought, the Debtor intends to supplement this Disclosure Statement to describe the changes made in the Plan and the reasons for any proposed modifications.

### B.    Retention of Jurisdiction.

As set forth in the Plan, the Court will retain Jurisdiction over substantially all matters arising in connection with the Chapter 11 Case and the Plan.

## XI.    CONCLUSION.

The Debtor believes that the treatment afforded creditors under the proposed Plan provides the best alternative to its Creditors, and urges that you vote in favor of the Plan.

DATED this 23rd day of June, 2011.

EFD, LTD d/b/a BLANCO SAN MIGUEL

By: WWTT, LLC, general partner

By: _/s/ S. Frank Bright_____
    S. Frank Bright, Manager

Respectfully submitted,

HOHMANN, TAUBE & SUMMERS, L.L.P.

By: _/s/ Eric J. Taube_____
    Eric J. Taube
    State Bar No. 19679350
    Mark C. Taylor
    State Bar No. 19713225
    100 Congress Avenue, 18th Floor
    Austin, Texas 78701
    (512) 472-5997
    (512) 472-5248 (FAX)

ATTORNEYS FOR DEBTOR

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing has been served on the parties receiving the Court's ECF service and on the parties listed on the attached Service List and via first class mail on this 23rd day of June, 2011.

_/s/ Eric J. Taube_
Eric Taube

# SERVICE LIST

Blanco County Appraisal
PO Box 338
615 N. Nugent
Johnson City, TX 78636

Burnet County Appraisal District
P.O. Box 908
223 South Pierce
Burnet, TX 78611

Capital Farm Credit
5900 SW Parkway Suite 501
Austin, TX 78735

CLMI Trust
PO Box 154369
Waco, TX 76715

Connecticut Avenue Properties,
Inc
PO Box 8157
Waco, TX 76714

Dale & Rita Steitle
PO Box 791
Burnet, TX 78611

Dillocopter LLC
13200 Bee Cave Pkwy
Austin, TX 78738

Driftwood Land Co.
13200 Bee Cave Pkwy
Austin, TX 78738

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

Land Sculptors Inc
13200 Bee Cave Pkwy
Austin, TX 78738

Larry Meyer
2607 Chalk Knoll Cove
Austin, TX 78735

LCRA
11612 Bee Caves Rd.
Bldg. 1, Suite 150
Austin, TX 78738

Maxwell Locke & Ritter, LLP
401 Congress Avenue, Suite
1100
Austin, TX 78701

Pedernales Electric
P.O. Box 1
Johnson City, TX 78636

Ranch 122, LLC
4571 SW Thistle Terrace
Palm City, FL 34990

Ranches and Rivers Realty
13200 Bee Cave Pkwy
Austin, TX 78738

Sheiness, Scott, Grossman,&
Cohn LLP
1001 McKinney
Suite 1400
Houston, TX 77002

Stone & Bruce PC
16800 Westgrove Drive
Suite 400
Addison, TX 75001

U.S. Trustee
903 San Jacinto Blvd., Suite 230
Austin, TX 78701

Whiteside Insurance
P.O. Box 605
Spicewood, TX 78669

William J Maddux Exempt Trust
13200 Bee Cave Pkwy
Austin, TX 78738

William J. Maddux
13200 Bee Cave Pkwy
Austin, TX 78738

WWTT, LLC
13200 Bee Cave Pkwy
Austin, TX 78738

## PARTIES REQUESTING NOTICE

H. Miles Cohn
Sheiness, Scott, Grossman &
Cohn, LLP
1001 McKinney, Suite 1400
Houston, TX 77002-6323

Lee Gordon
McCreary, Veselka, Bragg &
Allen, P.C.
P.O. Box 1269
Round Rock, TX 78680

Stephanie E. Kaiser
Kelly Hart & Hallman, LLP
201 Main Street, Suite 2500
Fort Worth, TX 76102

Richard A. Kelley
Kelly Hart & Hallman, LP
301 Congress Ave., Suite 2000
Austin, TX 78701

James N. Rader
Lower Colorado River Authority
P.O. Box 220
Austin, TX 78767-0220